## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| CODE-TO-LEARN FOUNDATION D/B/A SCRATCH FOUNDATION,<br><br>        Plaintiff,<br><br>v.<br><br>SCRATCH.ORG, an Internet domain name,<br><br>        Defendant. | Civil Action No. 1:19-cv-67-LO-MSN |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL AND MOTION TO DE-DESIGNATE DISCOVERY MATERIALS

Plaintiff Code-To-Learn Foundation d/b/a Scratch Foundation ("Plaintiff" or "Scratch Foundation"), by counsel, submits this memorandum in support of its second motion to compel and to challenge Defendant scratch.org's improper designation of certain publicly available and/or non-confidential information as "Outside Counsel's Eyes Only" in response to Plaintiff's First Set of Interrogatories and First Set of Requests for Documents and Things.

Defendant appears to be using an improper designation of materials as "Outside Counsel's Eyes Only" to hide Defendant's unlawful cybersquatting of a wide range trademarked names.  This is not a valid reason to designate materials as attorneys' eyes only, and such an improper designation imposes unnecessary procedural hurdles on Plaintiff and the Court and will needlessly hamper Plaintiff's ability to prepare for trial.  Therefore, Plaintiff's motion should be granted.

## I.      FACTUAL BACKGROUND

Following a protracted jurisdictional dispute stemming from Defendant's unsuccessful attempt to defeat this Court's *in rem* jurisdiction by disclosing the name of its purported registrant,

the Court issued a Scheduling Order opening discovery on May 30, 2019, and set the close for October 11, 2019.  Dkt. No. 35.

Plaintiff promptly served its first sets of interrogatories and requests for production on June 3, 2019, by hand delivery.  Plaintiff's requests included an interrogatory and requests for production seeking information regarding other domain names currently or previously registered to the registrant of the scratch.org domain name as well as certain information about each domain name.  *See* Ex. A (Plaintiff's First Set of Interrogatories) at Interrogatory No. 10; Ex. B (Plaintiff's First Set of Requests for Documents and Things) at Request Nos. 25 and 26.  These discovery requests relate directly to Defendant's pattern of bad faith registration of domain names with the intent to profit from others' marks—a statutory indicium of bad faith under the ACPA.

On June 18, 2019, Defendant served objections to the discovery.  Defendant failed to provide its responses on July 3, 2019, as required in the absence of a valid settlement agreement or a stay of discovery, which Defendant never sought not received.[1]  Following a hearing on September 13, 2019, this Court granted Plaintiff's Motion to Compel, *inter alia*, full and complete responses to Interrogatory No. 10 and Document Request Nos. 25 and 26.

On September 17, 2019, the Court entered a Protective Order Without Sealing Provisions (ECF No. 52), which permits a person producing discovery material or a party to designate information in one of two categories:

---

[1] The parties entered into a valid and binding settlement agreement on June 25, 2019.  Defendant, however, has disputed that the agreement reached between the parties on June 25, 2019 is binding. Nothing in this memorandum shall constitute a waiver of Plaintiff's right to seek to enforce the terms of the June 25, 2019 settlement agreement, which Plaintiff expressly reserves.

- "Confidential" for information that "contains: proprietary or competitively sensitive information or other private information, the disclosure of which would be detrimental to that party." *Id.* at 2.

- "Outside Counsel's Eyes Only" for information that it deems "so competitively sensitive that it should not be learned by its competitors or persons with whom it conducts business." *Id.* at 4.

On September 20, 2019, Defendant served a partial response to Plaintiff's discovery requests that included a pdf document identifying domain names either currently or previously owned by the claimed registrant, Mr. Lahoti.[2]  Defendant designated this entire document as "Outside Counsel's Eyes Only."  Pursuant to Paragraph 10 of the Protective Order, on September 17, 2019, Plaintiff's Counsel provided Defendant's Counsel with written notice objecting to the designation of these materials as "Outside Counsel's Eyes Only."  After a meet-and-confer, a dispute remains regarding the designation of these documents.

## II.   <u>STATEMENT OF GOOD FAITH EFFORT TO RESOLVE DISPUTE</u>

Pursuant to Local Rule 37(E), the parties exchanged letters regarding matters in dispute, after which counsel conferred by telephone on September 19, 2019.  Although the parties were able to narrow some items in dispute, they continue to disagree regarding whether Defendant's designation of a list of domain names currently or previously owned by Mr. Lahoti is properly the subject of an "Outside Counsel's Eyes Only" designation.

On September 20, 2019, Plaintiff's counsel sent a follow-up email to Defendant's counsel after discovering that the list of domain names provided by Defendant does not appear to be

---

[2] Based upon Plaintiff's initial review, the list provided by Defendant does not appear to include all domain names owner or previously owned by Mr. Lahoti.  Plaintiff reserves the right to raise this issue in a subsequent motion.

complete based on other public information about domain names Mr. Lahoti has owned.  This raises serious concerns about the accuracy and completeness of Mr. Lahoti's responses and whether he can be trusted to comply with a court order.  As of this writing, Defendant's counsel has neither responded to that email nor provided a complete list of domain names owned or used by the owner of the Scratch.org domain name.

## III.   ARGUMENT

The list of domain names provided by Defendant does not meet the criteria for a designation of "Confidential" or "Outside Counsel's Eyes Only," and the Court should compel Plaintiff to reproduce the subject materials without the improper designation.  As noted above, the Court issued a Protective Order Without Sealing Provisions on September 17, 2019, that permitted persons producing discovery material or the parties to designate information in one of two categories:

- "Confidential" for information that "contains: proprietary or competitively sensitive information or other private information, the disclosure of which would be detrimental to that party."

- "Outside Counsel's Eyes Only" for information that it deems "so competitively sensitive that it should not be learned by its competitors or persons with whom it conducts business."

ECF No. 52, ¶¶ 2, 4.  The list of domain names provided by Defendant does not meet the criteria for either designation.

Furthermore, Defendant should be required to produce a full and complete list of domain names presently or previously registered or used by the owner of the Scratch.com domain name.

### A.   The List of Domain Names Owned By Mr. Lahoti Is Neither Confidential Nor Outside Counsel's Eyes Only.

Mere ownership of property such as a domain name is not "proprietary or commercially sensitive," and the Court should not aid a known cybersquatter's attempt to hide behind a protective order, nor should the Court aid the illegitimate business of cybersquatting generally. When enacting the ACPA, and amendments to the statute, Congress addressed the importance of publicly available and accurate data identifying domain name owners.  H. Rept. 108-536, *Report from the Committee on the Judiciary to accompany H.R. 3754*  ("The Committee believes that the existence of an accurate and publicly accessible tool for searching contact information associated with a domain name, like the Whois database, is essential for the continued growth of the Internet which will depend upon Internet users trusting those with whom they interact.").  Moreover, 15 U.S.C. 1117(e) creates a rebuttable presumption that an ACPA violation is willful when false contact information is used in a domain name registration record—as Mr. Lahoti has apparently done with many domain name registrations.  Mr. Lahoti's improper invocation of the protective order is contrary to the public policy of the United States, which has recognized that "[i]t is beyond dispute that the public needs and deserves access to accurate data on domain name registrants." *Fraudulent Online Identity Sanctions Act*: *Hearing on H.R. 3754 Before the H. Subcomm. on Courts, the Internet, and Intellectual Property*, 108th Cong. 2 (2004) (statement of Rep. Lamar Smith, Chairman, H. Subcomm. on Courts, the Internet, and Intellectual Property).

In determining whether information should be protected from public disclosure, courts weigh the requestor's interest in preserving confidentiality against the public's interest in access, which is well-established in this circuit.  *See Aschcraft v. Conoco, Inc.*, 218 F.3d 282, 288 (4th Cir. 2000); *U.S. ex rel. Carter v. Halliburton Co.*, 2011 WL 2077799, at *2 (E.D. Va. 2011). Defendant's improper designation of material as Outside Counsel's Eyes Only "contravenes Rule

26(c)'s good cause requirement and improperly delegates judicial authority to [Defendant]." *See Aviles v. BAE Sys. Norfolk Ship Repair, Inc.*, No. 2:16CV58, 2017 WL 10187460, at *2 (E.D. Va. Aug. 28, 2017).

Mr. Lahoti has no legitimate interest in protecting the list of domain names that he owns from public disclosure. As a "notorious cybersquatter," ECF No. 34 at 4, Mr. Lahoti has been the subject of extensive litigation that has publicly revealed his domain name holdings. *See, e.g.*, *TrafficSchool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1081 (C.D. Cal. 2008*), aff'd in part, rev'd in part and remanded*, 653 F.3d 820 (9th Cir. 2011) (identifying Mr. Lahoti's "pattern of registering misleading domain names such as 'lasuperiorcourts.org,' 'USTREASURY.ORG' and 'USDEPARTMENTOFHOMELANDSECURITY.ORG,' that redirect visitors to Defendants' own websites, including DMV.ORG, and other affiliates."); *TrafficSchool.com v. eDriver, Inc.*, No. CV 06-7561 PA (CWX), 2012 WL 12949932, at *3, *12 (C.D. Cal. May 3, 2012); *See Lardas v. Lahoti*, No. 8-17-cv-00690-JLS-JDE, 2017 WL 8186149, at *1 (C.D. Cal. Sept. 5, 2017). The latter case identified more than 2,000 domain names registered to Mr. Lahoti, many of which involve ***the very domain names that Defendant now seeks to conceal*** not only from public disclosure, but also from disclosure even to the Plaintiff. A copy of the list of domain names attached to the complaint in the *Lardas* case is attached hereto as Exhibit C.

Defendant's claim that his domain name holdings are "proprietary and confidential" is also belied by Mr. Lahoti's conduct in this case, which reflects a pattern of attempting to hide behind aliases and private domain name registrations only to publicly disclose his ownership when he deems it beneficial to do so. *See* ECF No. 34 at 4 (criticizing Mr. Lahoti's actions to "actively conceal[] his identity as the purported owner of Scratch.org"); *3636275 Canada v. eResolution.com*, D2000-0110 (WIPO Apr. 10, 2000) (Dkt No. 20-8) (rejecting Mr. Lahoti's claim

that he is the registrant of a challenged domain name, after he provided no evidence that he was in fact the registrant; he asked to be contacted through generic emails; he provided only a P.O. box for his address; and he provided a telephone number that was "an answering machine of an unidentified person").

Defendant's claim that a 492 page document listing Mr. Lahoti's current and former domain names is proprietary and confidential also cannot be reconciled with ICANN's Temporary Specification for gTLD Registration Data and the Registrar Stakeholder Group's Minimum Required Information for Whois Data Requests, which confirm that Mr. Lahoti's ownership of these domain names can be disclosed to a number of parties, including "requests made by private companies / individuals pursuing civil claims." *See* Internet Corporation for Assigned Names and Numbers, *Temporary Specification for gTLD Registration Data (Effective 25 May 2018)*, *available at* https://www.icann.org/resources/pages/gtld-registration-data-specs-en/#7; ICANN Registrar Stakeholder Group, *Minimum Required Information for Whois Data Requests* (Feb. 2019), *available at* http://icannregistrars.org/wp-content/uploads/2019/02/RrSG-Minimum-Required-Information-for-a-Whois-Data-Requests.pdf.

Defendant's primary goal in designating these domain names as "Outside Counsel's Eyes Only" is apparently to limit attention to his unlawful registration of domain names corresponding to numerous well-known trademarks in an attempt to avoid future litigation over those domain names. This, however, is not a valid reason to withhold information from public disclosure. In essence, Mr. Lahoti wants the Court to assist in hiding his improper business practices.

Finally, even if the Court determines that the list of Mr. Lahoti's domain names is somehow "proprietary and confidential," it certainly is not "so competitively sensitive that it should not be learned by its competitors or persons with whom it conducts business." Plaintiff Scratch

Foundation is not in the business of buying or selling domain names and is merely attempting to recover a domain name unlawfully registered, used, and transferred by a serial cybersquatter. There is simply no valid basis for precluding Plaintiff's counsel from discussing Mr. Lahoti's domain names with Plaintiff Scratch Foundation as part of its prosecution of this matter.

       **B.**       **Failure To De-Designate The Domain Names Will Harm Plaintiff And Disserve The Public Interest.**

Defendant's improper designation imposes unnecessary procedural hurdles on Plaintiff and the Court and will needlessly hamper Plaintiff's ability to prepare for trial. First, if the Court were to allow Defendant to improperly designate the list of domain names owned by Mr. Lahoti as "Outside Counsel's Eyes Only," documents and testimony regarding Mr. Lahoti's bad faith will need to be filed under seal and/or conducted in a closed courtroom.

Moreover, Defendant's improper designation is already burdening Plaintiff's ability to prosecute this matter. If this designation is allowed to stand, Plaintiff's counsel will be unable to strategize with their client how the domain names identified by Defendant relate to the bad faith factors under the ACPA. The improper designation also directly hinders Plaintiff's ability to conduct third-party discovery regarding Mr. Lahoti's conduct with regard to the registration of other domain names by Mr. Lahoti that correspond to valid trademark registrations, which Defendant conceded is relevant at the September 13, 2019 hearing and the Court affirmed.

In short, Mr. Lahoti appears to be using the protective order as a shield to hinder Plaintiff's trial preparation rather than to protect information that it truly proprietary or confidential.

       **C.**       **As This Court Already Ordered, Defendant Must Disclose All Domain Names Presently Or Previously Registered Or Owned By The Owner of Scratch.org.**

Finally, the list of domain names produced by Defendant appears to be incomplete. Interrogatory No. 10 reads:

> Identify all domain names presently or previously owned or used by the owner of the SCRATCH.ORG domain name, and for each, itemize in the chart below (adding more boxes as applicable) the revenues that the owner has obtained from each identified domain name and the use of each domain name, and identify by Bates Numbers (from SCRATCH.ORG's document production) all documents reflecting or describing such information.

After a hearing on Plaintiff's first Motion to Compel this information, the Court's September 13, 2019 Order directed Defendant to provide "complete responses" to this Interrogatory and Plaintiff's other outstanding discovery requests. However, the list of domain names produced by Defendant does not appear to include all domain names presently or previously owned by Mr. Lahoti. Specifically, the list attached hereto as Exhibit C includes a number of domain names previously known to be owned by Mr. Lahoti that do not appear on the list provided by Defendant. The fact that Mr. Lahoti, while under a court order to provide this information, has not produced a complete list suggests that Mr. Lahoti has again decided not to be forthcoming with this Court.[3] The Court should once again compel Defendant to provide a full and complete response to this Interrogatory, and should award other additional relief this Court deems appropriate to ensure that Mr. Lahoti complies with his discovery obligations.

---

[3] In response to the briefing regarding Mr. Lahoti's motion to transfer the case, the Court acknowledge the "multiple and serious inconsistencies within and among the two declarations submitted by Mr. Lahoti," which included providing inconsistent addresses and providing incomplete information about the services that Mr. Lahoti used to conceal his involvement with the domain name. ECF No. 34 at 4.

## IV.   __CONCLUSION__

For the reasons stated herein, Plaintiff asks that the Court issue an order directing Defendant to reproduce the list of domain names owned by Mr. Lahoti without a Confidential or Outside Counsel's Eyes Only designation and grant such further relief as this Court deems proper.


Dated: September 20, 2019          By:      /s/ Attison L. Barnes, III /s/
                                            Attison L. Barnes, III (VA Bar No. 30458)
                                            David E. Weslow (*pro hac vice*)
                                            Adrienne J. Kosak (VA Bar No. 78631)
                                            Ari Meltzer (*pro hac vice*)
                                            WILEY REIN LLP
                                            1776 K St. NW
                                            Washington, DC 20006
                                            (202) 719-7000 (phone)
                                            (202) 719-7049 (fax)
                                            abarnes@wileyrein.com

                                            *Counsel for Plaintiff Code-To-Learn Foundation*
                                            *d/b/a Scratch Foundation*

## **CERTIFICATE OF SERVICE**

I, Attison L. Barnes, III, hereby certify that on September 20, 2019, I electronically served the foregoing on all counsel of record via the Court's CM/ECF system.

       /s/ Attison L. Barnes, III /s/

Attison L. Barnes, III
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wileyrein.com

*Counsel for Plaintiff Code-To-Learn*
*Foundation d/b/a Scratch Foundation*